**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| COLE FOCHT | ) CASE NO. 3:25-CV-02225-JRK |
| | ) |
| Plaintiff, | ) JUDGE JAMES R. KNEPP II |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I. Introduction

Cole Focht ("Focht" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On April 11, 2023, Focht filed an application for SSI, alleging a disability onset date of April 11, 2022 and claiming he was disabled due to a broken right leg (fibula and tibia), learning disability, depression, and anxiety. (ECF No. 5, PageID #: 255). The applications were denied initially and upon reconsideration, and Focht requested a hearing before an administrative law judge ("ALJ"). (ECF No. 5, PageID #: 132–138). On November 22, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 5, PageID #: 76–93). On December 16, 2024, the ALJ issued a written decision finding Focht

1

was not disabled. (ECF No. 5, PageID #: 57–71). The ALJ's decision became final on August 21, 2025, when the Appeals Council declined further review.  (ECF No.  5, PageID #: 46–49).

On October 17, 2025, Focht filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 6, 7). Focht asserts the following assignment of error: "[t]he ALJ improperly based the RFC on his own lay opinion rather that upon substantial evidence after failing to develop the record for opinion evidence." (ECF No. 6, at 1).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Focht's hearing:

At [the] hearing, the claimant testified that he was hit by a drunk driver and sustained a fracture of his tibia/fibula. The claimant testified that he has ongoing pain and difficulty walking. He stated he could walk no more than 10 minutes before having severe pain. He further testified that he has used a walker in the past as well as a knee scooter and he continues to use these devices. He stated he has pain within five minutes of standing and he feels at times that he is going to lose his balance and fall. The claimant testified that he must sit down and still has pain while sitting. He further testified that he has difficulty climbing stairs but can climb down them. The claimant further testified that he has difficulty carrying heavy items, such as 25 pounds, when his leg is hurting. The claimant stated he could carry 10 pounds repeatedly, but his leg would hurt. The claimant stated he has difficulty going out in public if he is in a lot of pain. He further testified that he has difficulty dressing if his pain is really high. He then testified that his pain is high on a daily basis. The claimant testified that he misses appointments regularly due to pain. The claimant stated he has difficulty focusing and concentrating due to pain. If he is in a stressful situation, he testified that he has to sit and take pain medication. This occurs mainly when climbing stairs. The claimant testified that he has bad depression and anxiety. The claimant stated he has had past suicidal ideation but has had someone stop him or he stopped himself from acting on this. When he is anxious, he stated his mind is racing and he feels shaky. These episodes typically occur three times a week and last up to two hours. He stated they randomly occur. He stated his mental health symptoms affect his ability to be in public, but he has no difficulty interacting with family. The claimant further testified he has difficulty reading and understanding things (Hrg. Tr.).

(ECF No. 5, PageID #: 67).

2

**B.  Relevant Medical Evidence**

The ALJ also summarized Focht's health records and symptoms:

The record shows the claimant was involved in an automobile accident on December 18, 2021. He presented to the emergency department and was found to have fractures of the mid to distal tibia and fibula and was admitted. The claimant underwent an open reduction and internal fixation of the distal tibial fracture with placement of a rod and was discharged the following day with a prescription for a wheeled walker (2F/21, 67-72 & 145-149). At his six-week follow-up, the claimant was doing well. He was receiving physical therapy. There is no indication of ongoing need for an assistive device. The claimant reported he had started a new factory job the prior day and was having increased pain and swelling in the right lower extremity after working an eight-hour shift. He did not have any ibuprofen with him at that time to help with pain. He denied any numbness or tingling. The claimant was notably ambulating without any assistive devices. On examination, he had mild deformity at the location of the fracture and mild swelling around the knee. The surgical incisions were healing well, and sensation was intact to light touch. The claimant was able to perform a straight leg raise, and range of motion of the knee was 0-120 degrees without difficulty. He had only slight tenderness to palpation over the knee incision and slight stiffness in the right ankle compared to the left with plantar flexion and dorsiflexion, with about 5 degrees of a lag compared to the opposite leg. X-rays showed evidence of healing and the ankle was noted to be in valgus positioning. The hardware appeared stable. The claimant was given work restrictions to working four-hour shifts for one week and then progressing weekly by one hour until working up to his full eight-hour shift. He was recommended to use Motrin for pain and continue therapy (2F/10). At a virtual follow-up with orthopedics on March 10, 2022, the claimant denied any pain. X-rays showed stable progressive healing of the right distal tibial fracture. The claimant was released to return to his full-time job without restrictions (2F/8-9 & 170).

The claimant followed-up with orthopedics on April 11, 2022. The provider noted that he had previously been returned to work full time without restrictions, but his employer nevertheless let him go. The "only symptoms" he had was intermittent pain in the ankle region (2F/7). On examination, the incisions were well-healed. There was no malalignment, no effusion in the knee joint or ankle and he had equal range of motion compared to the other side. X-rays showed the fracture consolidating nicely, with no abnormality. The claimant was reassured there was no major problem and he could use the leg actively. He was to return on an as needed basis (2F/7-8 & 166-169). However, there is no further follow-up with this provider or any other regarding the right leg injury.

With respect to his mental health, the claimant has a history of mild depression. However, as noted in a follow-up in July 2021, he was doing much better since working a full-time job in a shop for his father at a construction company. His

3

mental health examination showed him to be alert and oriented with normal attention. His mood was normal, not anxious but his affect was flat. The claimant was prescribed a low-dose anti-depressant (3F/30-33). The following month, he reported the medication was very helpful and his father had noticed a significant improvement (3F/26). Although there had been past suicidal ideation, it resolved (3F/22).

Following the accident, the claimant reported a worsening of symptoms at a primary care follow up on December 22, 2021. His examination showed him to be alert and oriented with normal mood and attention. His speech and behavior were normal, and he was cooperative. Thought content, cognition, and judgment were all normal He was tapered off Lexapro and started on Zoloft (3F/17). Records from January 2022 show that his moderate depression had improved to mild. Nevertheless, his dose of Zoloft was increased to 100 mg. daily (3F/13-16).

The claimant did not follow-up for his depression again until nearly a year later when he was seen in December 2022, at which time he reported he had not been taking his anti-depressant. He reported a dysphoric mood but denied agitation or confusion and denied suicidal ideation. He was neither nervous, anxious, or hyperactive. His mental status examination showed him to have normal attention and a normal mood and affect. His speech was normal, as was cognition, thought content and judgment. The claimant was cooperative. His provider noted a lower level of comprehension/understanding. He was restarted on 50 mg. Zoloft daily (3F/9-12).

There are no further mental health records until July 22, 2024, when the claimant presented to Firelands Counseling & Recovery Services, reporting he recently was experiencing a lot of anxiety with his hands shaking and difficulty calming down. He reported he sometimes feels as if he does not want to be here but denied suicidal plans or intent. The claimant was staying in a camper on his grandparents' property behind their house. He presented with neat appearance, normal speech, and normal motor activity. His mood was depressed and his affect flat. The claimant's eye contact was normal. No cognitive or memory impairment was noted, and he had normal attention. Insight and judgment were good (4F/1-6). He began therapy the following week (4F/8). By mid-August, the claimant reported his anxiety had calmed down a lot since he got back together with his girlfriend. The record indicates he was working doing door dash (4F/10). There are no further treatment records.

(ECF No. 5, PageID #: 68–69).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

4

2. The claimant has the following severe impairments: right open tibia/fibula fracture, intellectual disability, anxiety, depression and obsessive-compulsive disorder (OCD). (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except simple, routine tasks, with instructions given orally, and with few detailed instructions. He can tolerate occasional changes and occasional decision-making. He can occasionally climb ramps and stairs; he should avoid ladders, ropes or scaffolds, avoid pace rate work, and avoid strict production quotas. He can tolerate frequent interaction with co-workers. He would be off task up to 5% of the workday.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 11, 2023, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 5, PageID #: 62–63, 66, 70–71).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at \*2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.  Discussion

Focht raises one issue on appeal, that "[t]he ALJ improperly based the RFC on his own lay opinion rather that upon substantial evidence after failing to develop the record for opinion evidence." (ECF No. 6, at 1). To support this argument, Focht contends that "… the record contained no medical opinion equating Plaintiff's severe impairments to functional limitations, and the ALJ failed to actually tether the limitations he included in the RFC to substantial evidence in the record." (ECF No. 6, at 6). Furthermore, Focht asserts that "[t]he ALJ failed to develop the record for any opinion evidence upon which to rely in assessing the RFC. Accordingly, remand is required." (*Id.*).

In response, the Commissioner contends,

The ALJ considered the medical and non-medical evidence and reasonably concluded that Plaintiff could perform light work with postural and mental limitations and therefore, was not disabled. Tr. 20. In doing so, the ALJ noted that Plaintiff was involved in an automobile accident in December 2021, fractured his fibula/tibia, underwent surgery and was released to work without restrictions in March 2022. Tr. 22, citing Tr. 282-83, 296, 346, 424-25, 441-42. While the state agency physicians found no severe physical impairment (Tr. 50, 55), the ALJ concluded that Plaintiff's right open tibia/fibula fracture was severe and that he could perform light work with postural limitations. Tr. 16, 20, 50, 55.2 The ALJ also considered evidence pertaining to Plaintiff's mental impairments and noted that he had a history of mild depression, took medication for the condition, reported improvement, and even worked during the relevant period. Tr. 22-23, citing Tr. 494, 504, 507-08, 557. While the state agency psychologists found insufficient evidence to assess Plaintiff's psychological functioning (Tr. 50-51, 56), the ALJ concluded that he could perform simple, routine tasks but had limitations handling changes, interacting with others and performing production quotas. Tr. 20.

(ECF No. 7, at 6). The Commissioner then concludes that the ALJ's decision was reasonable and supported by substantial evidence. (*Id*).

Claimant relies upon *Deskin v. Commissioner of Social Security,* to assert that the ALJ was required to obtain additional opinion evidence when formulating Claimant's RFC. 605 F. Supp. 2d 908 (N.D. Ohio 2008); (ECF No. 6, at 8). In *Deskin*, the court found "where the transcript

7

contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated non-examining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* at 911. Yet *"Deskin* has not been universally embraced by courts in this district." *Reidenbach v. Comm'r of Soc. Sec.*, 2022 WL 3043060, at *8 (N.D. Ohio Aug. 2, 2022). Accordingly, a court in this district found, "*Deskin*, is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals." *Kopcial v. Kijakazi*, 2024 WL 1131059 (N.D. Ohio Mar. 15, 2024) (*Henderson v. Comm'r of Soc. Sec.*, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010); *see also Berrier v. Comm'r of Soc. Sec.*, 2022 WL 189855, at *2 (N.D. Ohio Jan. 21, 2022) ("*Deskin* has since been critiqued by other courts in this District."); *Massey on behalf of K.L. v. Commr. of Soc. Sec.*, 2025 WL 1798248 (N.D. Ohio June 30, 2025); *Rogers v. Commr. of Soc. Sec.*, 2025 WL 2682141 (N.D. Ohio Sept. 19, 2025*), report and recommendation adopted*, 2026 WL 787950 (N.D. Ohio Mar. 20, 2026); *Incorvia v. Commr. of Soc. Sec.*, 2023 WL 6519152 (N.D. Ohio Sept. 20, 2023), *report and recommendation adopted*, 2023 WL 6519082 (N.D. Ohio Oct. 5, 2023) (collecting cases).

But an ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." *Id.* And it is well established that Plaintiff bears the burden to establish her disability. 20 CFR 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of proving a more restrictive RFC); *Casey v. Sec'y of Health Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability."). Moreover, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority

8

to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 CFR § 416.917(a)). While the ALJ has a duty to conduct a "full inquiry," that duty "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Here the ALJ reasonably developed the record by considering the relevant facts such that no additional medical opinion evidence was necessary as discussed below.

In determining the adequacy of the ALJ's RFC determination, a reviewing court must focus on the explanation given by the ALJ's decision without finding further support in the records not specifically included in the decision. *See Ripley v. Comm'r of Soc. Sec.,* 415 F. Supp. 3d 752, 764 (N.D. Ohio 2019) ("In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence de novo, make credibility determinations, or weigh the evidence"). To find substantial evidence here the Court need look no further than the ALJ's decision.  Prior to determining that Focht could perform light work at Step Four, the ALJ determined Focht's RFC. (ECF No. 5, PageID #: 66). The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). The ALJ formulated an RFC determining that Focht had the ability,

> To perform light work as defined in 20 CFR 416.967(b) except simple, routine tasks, with instructions given orally, and with few detailed instructions. He can tolerate occasional changes and occasional decision-making. He can occasionally climb ramps and stairs; he should avoid ladders, ropes or scaffolds, avoid pace rate work, and avoid strict production quotas. He can tolerate frequent interaction with co-workers. He would be off task up to 5% of the workday.

(ECF No. 5, PageID #: 66). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a

9

different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

In his decision, the ALJ acknowledged Focht's physical and mental impairments including, right open tibia/fibula fracture, intellectual disability, anxiety, depression and obsessive-compulsive disorder (OCD). (ECF No. 5, PageID #: 62). In his determination of the RFC, the ALJ first considered Focht's hearing testimony. (*Id.* at PageID #: 67). At the hearing, Claimant testified that he sustained a tibia and fibula fracture after being struck by a drunk driver. (*Id.*). He stated that he continues to experience difficulty with walking and pain. (*Id.*). According to Claimant, he can walk for no more than approximately 10 minutes before experiencing severe pain. (*Id.*). He further testified that he has used a walker and a knee scooter in the past and continues to rely on these assistive devices. (*Id.*). He stated that he begins to experience pain after standing for approximately five minutes and, at times, feels as though he may lose his balance and fall. (*Id.*). The claimant testified that he must sit to relieve his symptoms but continues to experience pain even while seated. (*Id.*).

The claimant further testified that he has difficulty ascending stairs, although descending stairs is less problematic. (*Id.*). He stated that lifting heavy objects, such as 25 pounds, is difficult when his leg is painful. (*Id.*). He testified that he is capable of repeatedly lifting approximately 10 pounds but experiences increased leg pain in doing so. (*Id.*). The claimant also testified that significant pain limits his ability to leave his home and be in public and that elevated pain levels

10

make dressing difficult. He stated that his pain is severe on a daily basis. (*Id.*). Additionally, Claimant testified that he regularly misses appointments because of pain and that pain interferes with his ability to focus and concentrate. (*Id.*). He further testified that, when confronted with stressful situations, particularly those involving stair climbing, he must sit down and take pain medication. (*Id.*).

The ALJ then considered Focht's physical health records. (ECF No. 5, PageID #: 68–70). The ALJ noted December 2021, Claimant sustained fractures of the mid to distal tibia and fibula in a vehicular accident. (*Id.* at PageID #: 68). Following the accident, Claimant underwent open reduction internal fixation of an open at midshaft tibial open fracture in December 2021. (*Id.*). The ALJ discussed February 2022 six week follow up progress notes, wherein Claimant was receiving physical therapy, had no indication of an ongoing need for an assistive device, and denied any numbness or tingling. (ECF No. 5, PageID #: 68, 330–31). Claimant reported that he had begun a new factory position the day before the evaluation and experienced increased pain and swelling in the right lower extremity following completion of an eight-hour work shift. He stated that he did not have ibuprofen available to alleviate his symptoms. (*Id.*). Despite these complaints, he was observed ambulating independently without the use of an assistive device. (*Id.*). Physical examination revealed a mild deformity at the fracture site and mild swelling surrounding the knee. The surgical incisions were noted to be healing appropriately, and sensation to light touch remained intact. (*Id.*). The ankle remained in valgus alignment, and the fixation hardware was stable without evidence of complication. (*Id.*). In light of the Claimant's increased symptoms following prolonged work activity, temporary work restrictions were implemented, limiting him to four-hour shifts for one week, with a planned increase of one hour per week until resumption of full eight-hour shifts. (*Id.*). He was also advised to use Motrin as needed for pain control and to

11

continue with physical therapy. (ECF No. 5, PageID #: 68, 330–31).

The ALJ considered a March 2022 virtual progress note wherein Claimant was released to work without restrictions, denied pain, repeat radiographs demonstrated stable, progressive healing of the right distal tibial fracture, and x-rays showed his "fracture [was] healing satisfactorily." (*Id*. at PageID #: 68, 329–30). The ALJ also discussed an April 2022 virtual progress note, that despite being let go from his job, that upon examination, his incision sites were well-healed, there was no malalignment, no effusion in the knee joint or in the ankle, and an equal range on motion compared to the other side, and x-rays showed "the fracture [was] consolidating very nicely." (*Id*. at PageID #: 68, 328–29). Finally, the ALJ concluded that the record contains no evidence of any subsequent orthopedic treatment or follow-up related to the right lower extremity injury. (*Id*. at PageID #: 68).

With respect to his mental impairments, Claimant testified that he experiences significant depression and anxiety. (ECF No. 5, PageID #: 67). He acknowledged a history of suicidal ideation but stated that he either stopped himself from acting on those thoughts or was prevented from doing so by another person. (*Id.*). He testified that, during periods of anxiety, his thoughts race and he becomes shaky. (*Id.*). According to the claimant, these episodes occur randomly approximately three times per week and may last up to two hours. (*Id.*). He further testified that his mental health symptoms interfere with his ability to be in public but do not affect his interactions with family members. (*Id.*). Finally, Claimant stated that he has difficulty reading and understanding written information. (*Id.*).

The ALJ considered Claimant's mental health evidence from the relevant period. (ECF No. 5, PageID #: 69). The ALJ considered a December 2021 primary care follow up, where he was tapered off Lexapro and started on Zoloft. (*Id.* at PageID #: 69, 541). The ALJ also considered

records from January 2022 that showed improvement in Claimant's condition, specifically Claimant's moderate depression improved to mild and an adjustment of his Zoloft medication. (*Id.* at PageID #: 69, 537). The ALJ noted that Claimant did not seek further mental health treatment until December 2022. (*Id.* at PageID #: 69, 536). In a December 2022 progress note, Claimant reported he had not been taking his anti-depressant and a dysphoric mood but denied agitation or confusion and denied suicidal ideation. (*Id.* at PageID #: 69, 536). Claimant was neither nervous, anxious, or hyperactive, and his speech was normal, as was cognition, thought content and judgment. (*Id.* at PageID #: 69, 535). His mental status examination showed him to have normal attention, mood, and affect. (*Id*). The claimant was cooperative, but his provider noted a lower level of comprehension/understanding. (*Id.*) He was restarted on 50 mg. Zoloft daily. (*Id.* at PageID #: 69, 536).

The ALJ also discussed Focht's July 2024 mental health treatment records. (ECF No. 5, PageID #: 69). Claimant stated to his provider that, "[h]e sometimes feels like he does not want to be here" but denied suicidal plans or intent. (*Id.* at PageID #: 69, 597). Claimant's provider noted that he presented with neat appearance, normal speech, and normal motor activity; his mood was depressed and his affect flat; eye contact was normal; cognitive or memory impairment was noted, and he had normal attention; insight and judgment were good. (*Id*. at PageID #: 69, 594–99). He began therapy the following week and by mid-August, the claimant reported "… his anxiety had calmed down a lot." (*Id*. at PageID #: 69, 603). As Claimant concedes, this record includes no opinion evidence submitted by the Claimant. (*Id.*). Yet the Commissioner correctly notes that the record contained the opinions of state agency physicians Dr. Steve McKee and Dr. Bradley who opined that Claimant's "Physical conditions did not last and currently do not cause more than mild limitations on functioning." (ECF No. 5, PageID #: 96, 98). Although, the ALJ did not mention

13

the opinions of the state physicians in his written opinion, the ALJ adopted a finding more restrictive than the state agency physicians' recommendation. Thus, this omission does not require remand. A remand will not be required when the ALJ's omission is harmless error. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'").

Focht attempts to shift the burden of developing the medical records to the ALJ. Specifically, Focht contends that "[t]he ALJ should have developed the record for some opinion evidence to explain the limitations that would result from Plaintiff's impairments … [i]nstead, he relied on his own lay opinion to evaluate Plaintiff's RFC." (ECF No. 9, at 9). Based on the Court's review of the record and the ALJ's decision, it cannot find any circumstances that warranted expansion of the record. Claimant was represented by counsel at the hearing, obtained and submitted multiple functional assessments, and has not demonstrated any other circumstance that would demand more records. (ECF No. 5, PageID #: 76 (Claimant had counsel)); *see also Roberts v. Commr. of Soc. Sec.*, 2023 WL 4243225, at *20 (N.D. Ohio Jan. 23, 2023). And as the Commissioner correctly highlights,

> At the hearing, Plaintiff's attorney requested that the record be left open to submit a medical source statement from his counselor and medical records from ProMedica Physicians Internal Medicine. Tr. 32. The ALJ granted his request. Tr. 33. After the hearing, Plaintiff's attorney submitted a statement noting that the counselor was unable to complete the medical source statement. Tr. 575-76. Plaintiff's attorney did not request that the ALJ obtain a consultative examination. Tr. 575.

(ECF No. 7, at 8–9).

Nevertheless, Focht repeatedly contends that the ALJ "interpreted raw data" thus the RFC is not supported by substantial evidence and necessitates remand. (ECF No. 6, at 7, 9). Claimant

14

is correct that "ALJs are generally unqualified to interpret 'raw medical data' and make medical judgments concerning reasonable limitations." *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 727 (6th Cir. 2013) Raw medical data, however, generally includes testing such as x-rays, MRI images, or an EMG. *See e.g. Holland v. Comm'r of Soc. Sec.,* 2014 WL 1118521, at *7 (E.D. Mich. Mar. 20, 2014) or an EMG, *Kidder v. Comm'r of Soc. Sec.*, 2020 WL 1080413, at *5 (S.D. Ohio Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 5201080 (S.D. Ohio Sept. 1, 2020). "Treatment notes or reports from medical professionals following various testing, on the other hand, are not considered raw medical data beyond the ALJ's expertise." *Lonnie F. v. Commr. of Social Sec.*, 2024 WL 3506946, at *3 (S.D. Ohio July 23, 2024).

Yet Claimant does not identify any tests, x-rays, MRI images, EMGs or the like that the ALJ interpreted. Despite Claimant's contentions, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). Further, the Sixth Circuit has "rejected the argument that a[n] [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 Fed. App'x 395, 401 (6th Cir. 2018). Here, the ALJ reviewed and weighed what evidence is in the record, including Focht's medical records, hearing testimony, statements to medical professionals, and progress notes. (ECF No. 5, at 63–70).

Furthermore, the ALJ reasonably explained how he considered Focht's impairments and how he accommodated these symptoms when he formulated Focht's RFC. Claimant does not argue that the ALJ erred in any part of this analysis, such as by cherry-picking records or not properly evaluating Focht's symptoms under applicable regulations. Rather, Focht's principal argument is that the ALJ's analysis was incomplete and requires greater limitations without pointing to

15

evidence in the record to support greater limitations. Even so, the ALJ's RFC formulation was reasonably drawn from and supported by substantial evidence. And when supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). Thus, this Court finds the ALJ reasonably developed the record by considering the relevant facts such that no additional medical opinion evidence was necessary.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Focht's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: July 30, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).